IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**UNITED STATES OF AMERICA,**      Case 3:14 CR 204

    Plaintiff,      Judge Jeffrey J. Helmick

    v.      Magistrate Judge James R. Knepp, II

**JUAN RAMON VALADEZ-LARA A/K/A**
**JUAN RAMON VALADEZ-BONILLA**

    Defendant.      MEMORANDUM OPINION AND ORDER

PROCEDURAL BACKGROUND

Juan Ramon Valadez-Lara, a.k.a. Juan Ramon Valadez-Bonilla ("Defendant") was arrested on May 20, 2014 and charged with illegal re-entry after removal pursuant to 8 U.S.C. § 1326(a) and (b). (Docs. 5, 6). Defendant was ordered detained by Magistrate Judge Armstrong but a bail hearing was not held because of an immigration detainer filed by the Bureau of Immigration and Customs Enforcement ("ICE"). (Doc. 7). In August 2014, Defendant filed a Motion to Dismiss the Indictment (Doc. 9) and a hearing was held before Judge Helmick on October 16, 2014 (Non-document entry filed October 14, 2014). A ruling on Defendant's motion is still pending.

On January 21, 2015, Defendant requested a detention hearing (Doc. 15) and one was held before this Court on February 3, 2015. Following the conclusion of the hearing, both parties filed briefs on the merits regarding whether continued detention was appropriate under the Bail Reform Act of 1984, as amended. (Docs. 16, 17).

FACTUAL BACKGROUND

Defendant was first apprehended by immigration officials in May 2003 at the age of fifteen, at this time he gave his name as Juan Ramon Valadez-Lara. (Doc. 16-5). He was transferred from the custody of the Lorain Police Department where he had been convicted of drunk and disorderly conduct. (Doc. 16-5). Defendant did not appear for his initial removal hearing and an order of removal *in absentia* was entered. (Doc. 16-7). Defendant was again apprehended in August 2008, after which he was subsequently removed to Mexico on the reinstated removal order. (Doc. 16-5). Defendant's Alien file ("A-file") shows he has re-entered the United States on at least five different occasions and has been removed four times. (Doc. 16-1). Additionally, according to his A-file it was typical for Defendant to use different names upon apprehension. (Doc. 16-1).

Defendant, now 26 years old, has been arrested on multiple alcohol related charges as an adult. (Doc. 16-8; 16-10). He has been convicted once of driving under the influence, and has had two other charges of driving under the influence dismissed. (Doc. 16-8). In addition, Defendant pled no contest to a misdemeanor assault charge, which had been reduced from felonious assault. (Doc. 16-8). His most recent arrest, on May 12, 2014, involved disorderly conduct while intoxicated. (Doc. 16-10). Following his arrest by the Erie County Sheriff, Defendant was arrested and charged with illegal re-entry into the United States after removal. (Doc. 6).

Defendant has lived in northeast Ohio, mainly Lorain, for approximately twelve years; he has also purchased a home there. Numerous members of Defendant's family live in this area, including his four U.S. citizen children, his girlfriend of eight years, and his legal permanent resident father. Aside from his immediate family, Defendant has approximately 30 other family members living in the northeast Ohio region with whom he visits regularly.

Defendant suggested at his detention hearing that he be released into the custody of his U.S. citizen uncle, Luis Avila, and if necessary, given an electronic ankle monitor to insure his appearance in court.

DISCUSSION

The issue before the Court is whether an individual under a removal order, and subject to an immigration detainer, is eligible for bail under the Bail Reform Act; and if so, under what conditions. The Court will begin with a discussion of the relevant statutes and then move into an analysis of how the interaction between these statutes affects Defendant's eligibility for bail.

*Bail Reform Act of 1984, as Amended*

Under the Bail Reform Act ("BRA"), Congress has determined a judicial officer may either release on their own recognizance, release with conditions, temporarily detain, or detain any person charged with a federal crime. 18 U.S.C. § 3142(a). A judicial officer shall release any person unless it is "determine[d] that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." § 3142(b). The Government bears the burden of proving a defendant is not eligible for release. *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010).

The court is required to release persons "subject to the least restrictive [] conditions, or combination of conditions" that will assure the person's appearance. § 3142(c)(1)(B). In making a bail determination the court is required to consider: the nature and circumstances of the offense; the weight of evidence against the person; history and characteristics of the person; and the danger to any person or the community that would be posed by the person's release. § 3142(g).

Important to this matter is the effect of Defendant's immigration status on his eligibility for release. The Act's only reference to immigration status is in § 3142(d) which allows for

3

temporary detention of a non-citizen to permit notification to the proper immigration authorities. § 3142(d)(1)(B). However, that detention is limited to ten work days and if custody is not transferred or is refused, the judicial officer must proceed with a bail determination as required under the aforementioned sections. § 3142(d). Under the BRA, "Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings." *United States v. Adomako*, 150 F.Supp.2d 1302, 1304 (M.D. Fla. 2001). Thus for purposes of bail, immigration status is not a factor for consideration in § 3142(g). *See* § 3142; *United States v. Trujillo-Alvarez*, 900 F. Supp.2d 1167, 1174 (D. Or. 2012).

*Immigration and Nationality Act, as Amended*

The Immigration and Nationality Act of 1965, as amended, contains the body of immigration law in the United States. 8 U.S.C. § 1101 *et. seq.* ("INA"). The Executive Branch has the authority to detain and remove aliens from the United States. § 1231. In furtherance of that authority, ICE may request a detainer be placed upon a removable individual. § 1103(a)(3). "A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R § 287.7(a).

When an alien is ordered removed, the INA provides the Attorney General "shall remove the alien from the United States within a period of 90 days." § 1231(a)(1)(A). The removal period begins to run at the latest of the following:

1. The date the order of removal becomes administratively final.
2. If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
3. If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

§ 1231(a)(1)(B). Since Defendant already has a reinstated removal order, the most relevant factor is when is the alien "released from detention or confinement" and thus, eligible for removal under § 1231(a)(1)(A).

In *United States v. Trujillo-Alvarez*, the court made the following remarks on the meaning of the phrase "released from detention or confinement":

> Although the statutory phrase "released from detention or confinement" is not defined, in the context of the entirety of Section 1231 the most reasonable interpretation of that phrase is that it refers to release from incarceration pursuant to a final judgment of conviction as entered by a court of competent jurisdiction. *See, e.g.,* 8 U.S.C. § 1231(a)(4)(A) ("Except as provided in section 259(a) of title 42 and paragraph (2), the Attorney General [now, the Secretary of Homeland Security] may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment. Parole, [post-conviction] supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal."); *see also United States v. Rembao–Renteria,* No. 07–mj–399 (JNE/ABJ), 2007 WL 2908137, at *3 (D.Minn. Oct. 2, 2007) ("Parole, supervised release, probation, and the possibility of being imprisoned *again* all assume a conviction. The Court does not read this list to include conditions placed on a defendant who has been charged but not convicted.").
>
> In addition, a person who has been released subject to conditions of pretrial supervision is still "confined" because they are subject to restraints not shared by the public generally that significantly confine and restrain their freedom. *Cf. Hensley v. Mun. Ct.,* 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (holding that a person is in "custody" for purposes of the habeas corpus statute when the person is subject to restraints "not shared by the public generally"); *see also United States v. Castro–Inzunza,* No. 12–30205, Dkt. 9, 2012 WL 6622075 (Order) (9th Cir. July 23, 2012) (citing *Hensley* in support of the same proposition in the context of the INA).

900 F. Supp. 2d at 1174-75.

However, the Government argues and other courts have agreed that release on bail pending criminal trial under the BRA does not prevent ICE from acting on its own accord to take custody of the individual and begin removal proceedings. *See e.g., United States v. Sedano-Garcia*, 2013 WL 1395769 at *1 (E.D. Mich.) (defendant was granted bond but pursuant to ICE

detainer remained in administrative custody pending removal); *United States v. Lozano*, 2009 WL 3052279 at *1 (M.D. Ala.) ("It is undisputed that, if the court were to release the defendant on conditions pursuant to the Bail Reform Act, he would be transferred to ICE custody by the U.S. Marshal, transported from this district, and placed immediately in removal proceedings.). According to this argument, the statute requires mandatory detention and removal of an alien within 90 days regardless of his status as an individual on pre-trial release. 8 U.S.C. § 1231 *et. seq*.

Thus, this Court must determine how these two statutes, with competing interests, interact with regard to ongoing criminal prosecution before making a determination on whether bail is appropriate. Otherwise this is, as the Government argues, purely an academic exercise and the Court doubts release under one statute only to be confined under the other will be much relief to the Defendant.

*Interaction between the BRA and the INA*

Here, the Government argues release under the BRA will only result in detainment under the INA. Stated in other words, the INA's interest takes precedence over the BRA; a fact that if true, perverts the purpose of the BRA. However, two regulations issued under the INA lend credence to the opposite argument, i.e. criminal prosecution should take priority over removal.

First, 8 C.F.R § 215.2(a) provides: "No alien shall depart, or attempt to depart, from the United States if his departure would be prejudicial to the interests of the United States under the provisions of § 215.3." The second regulation states departure from the United States of any alien shall be deemed prejudicial to the interests of the United States if the alien is party to any criminal case pending in the United States. 8 C.F.R § 215.3(g). Therefore, the regulations have outlined a priority for prosecution over removal. A conclusion that is consistent with the

interpretation that removal periods do not begin until release from detention or confinement has been completed. 8 U.S.C. § 1231(a)(1)(B)(iii). Furthermore, the BRA specifically provides an opportunity for ICE to preempt the criminal investigation at 18 U.S.C. § 3142(d)(2); if custody is not transferred to the immigration authorities under this provision, then the alien is treated as any other individual would be under the BRA.

It appears from the statutory and regulatory language that detainment under the INA, for the purpose of arrest and removal, is secondary to the prosecution of aliens for criminal offenses. If ICE were to take custody of Defendant for the purposes of removal, as statutorily authorized, this Court could not prevent it, however "[w]hat neither ICE nor any other part of the Executive Branch may do, [ ] is hold someone in detention for the purpose of securing appearance at a criminal trial without satisfying the requirements of the BRA." *Trujillo*, 900 F. Supp.2d at 1179. The implication being that the BRA is not to be subverted by the existence of an immigration detainer. *Id.* at 1176. In the instant case the Court, guided by the statutes, regulations, and the reasoning of the *Trujillo* court, finds that should Defendant be released on bail under the provisions of the BRA, ICE would only be authorized to detain him for the purpose of removal within 90 days.

"Accordingly, the Executive Branch has a choice to make", it may either take Defendant into custody for the purpose of removing him or it may temporarily suspend removal while criminal proceedings are carried out. *Id.* at 1179. If ICE declines removal in favor of criminal prosecution, the Court will apply the BRA and the Defendant will be treated "in accordance with other provisions" of that law as required by Congress. 18 U.S.C. § 3142(d).

7

*Effect of ICE Detainer on the Requirements of the BRA*

However even after determining that an ICE detainer does not preclude or preempt the application of the BRA, this Court must evaluate whether the existence of an ICE detainer creates a "serious risk that [Defendant] will flee". § 3142(f)(2).

*Existence of an ICE Detainer Does Not Create an Automatic Exception to the BRA*

The Government proposed that by itself the existence of an ICE detainer creates a presumptive risk of non-appearance and thus, should in effect create an exception to the requirements of the BRA. *See e.g., United States v. Magallon-Toro*, 2002 WL 21757637 (N.D. Tex.) (holding a defendant with a removal order is subject to immediate deportation and thus, there is no combination of conditions that will assure his appearance for trial); *United States v. Pantaleon-Paez*, 2008 WL 313785 at *3 (D. Idaho) ("In light of the BICE detainer, no conditions of release can be imposed which will ensure Defendant's appearance."); *United States v. Sanchez-Valdivia*, 2008 WL 5104688 at *2 (D. Minn.).

However, this argument supposes it would be appropriate to simultaneously pursue removal and criminal proceedings; by no means a foregone conclusion. The Ninth Circuit, in an unpublished *per curiam* Order, addressed whether anticipated removal was justification, on its own, to detain an individual; it found if defendant was released on bail he would still be confined and thus, not eligible for immediate removal. *United States v. Castro–Inzunza,* No. 12–30205, Dkt. 9 (9th Cir. July 23, 2012), at *2–3. Many other courts have rejected the argument that by itself, an ICE detainer creates an exception to the requirements of the BRA. *See United States v. Barrera–Omana*, 638 F.Supp.2d 1108, 1111 (D.Minn. 2009) (holding allowing an ICE detainer exception negates the clear statutory language which requires an individualized assessment of individuals before the court); *United States v. Montoya–Vasquez*, 2009 WL 103596 (D.Neb.) ("…it would effectively mean that no aliens against whom ICE places detainers could ever be

8

released on conditions. Such a harsh result is nowhere expressed or even implied in the BRA."). This Court refuses to acknowledge an automatic exception to the BRA and abandon the individualized assessment without explicit guidance from Congress.

As stated above, in order to comply with both statutes the Executive Branch must choose which will take precedence in regard to a defendant. It cannot use the threat of removal under the INA "to disregard the congressionally-mandated provisions of the BRA", *Trujillo*, 900 F. Supp. 2d at 1178; but at the same time have no intent to effectuate removal, but rather only retain custody of the individual pending prosecution. The Executive Branch must determine what is more important, "the public's interest in criminally prosecuting [the] defendant" or "the public's interest in swiftly deporting him." *United States v. Marinez–Patino,* 2011 WL 902466 at *7 (N.D.Ill.).

*Immigration Detainer as a Factor in Pre-Trial Release Consideration*

While an ICE detainer alone does not create a *per se* exception to the BRA requirements, it "may be considered as a factor in assessing the risk that a particular defendant will flee." *United States v. Chavez-Rivas*, 536 F. Supp.2d 962, 964 n.3 (E.D. Wis. 2008). Although not universal, most courts have concluded the existence of an immigration detainer is a relevant factor for consideration when the court undertakes its assessment of a defendant's risk of flight. *See e.g., United States v. Salas-Urenas*, 430 F.App'x 721, 723 (10th Cir. 2011) (affirming district court's order of detention, finding "a defendant's immigration status and the existence of an ICE detainer are relevant to the detention decision as part of the history and characteristics of the defendant"); *United States v. Neves*, 11 F.App'x 6, 8 (1st Cir. 2001) (noting that the existence of a deportation order is relevant to the issue of flight); *United States v. Fuentes-Flores*, 2014 WL 3908168 at *5 (M.D. Fla) (stating "While an ICE detainer cannot be the sole reason for

9

detaining an individual in custody, it can be used as a consideration for detention."). *But see Marinez-Patino*, at *6 (holding "the likelihood of defendant's deportation is not among the Section 3142(g) factors that the Court may consider."); *Adomako*, 150 F. Supp.2d 1302 (Congress expressly instructed courts not to look at deportation when determining propriety for release pending trial).

However even though it is a factor for consideration, other courts have cautioned that the existence of an ICE detainer does not allow the court to speculate on the eventual results of immigration proceedings. *See United States v. Villanueva-Martinez*, 707 F.Supp.2d 855, 856-57 (N.D. Iowa 2010); *United States v. Montoya-Vasquez,* 2009 WL 103596 at *3-4 (D. Neb.)("The Bail Reform Act does not permit this court to speculate on the 'risk' that a defendant would not appear in this court due to his being removed from this country by the same government that is prosecuting him…Speculation is not evidence, much less preponderating evidence"). Therefore when considering Defendant's eligibility for release, the Court will assess Defendant's intentional risk of non-appearance and not whether an immigration detainer could, at some time in the future, result in his removal.

### *Application of § 3142(g) Factors to Defendant*

Having established that Defendant is eligible for bail under the BRA, the Court now turns to the statutory factors for determining pre-trial release and whether there is any condition, or combination of conditions, that can reasonably assure Defendant's presence in court. § 3142. As a preliminary matter, in his brief the Defendant argues the Court should not consider any evidence not presented at the detention hearing. However, the Court explicitly left open the record to allow for briefing on the issue of detention and thus, will evaluate the § 3142(g) factors according to the information provided in the parties' briefs and at the hearing.

The first factor is the "nature and circumstances of the offense charged". § 3142(g)(1). Defendant is charged with one count of illegal re-entry after removal; if convicted he faces up to two years in prison and mandatory removal from the United States. 8 U.S.C. § 1326(a-b). While illegal re-entry is a felony, there is no evidence that Defendant's re-entry was accomplished by violence or for the purpose of narcotics trafficking; rather the evidence shows Defendant has illegally entered on at least five occasions to be near his family. The Government contends that if released, the threat of imprisonment and removal will "present[] a strong motivation to flee" (Doc. 16, at 13), but this motivation must be balanced with Defendant's apparent desire to be with his family despite the risks.

Second, is the weight of the evidence and contrary to the Government's argument, it is not the weight of the evidence suggesting guilt but rather the weight of the evidence suggesting a defendant's dangerousness or risk of flight. *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). Defendant's past history of easily permeating the U.S.-Mexican border certainly weighs in favor of detention. But as stated above, it appears these border crossings were undertaken to be with his family and since his family is in Ohio the risk of flight may be diminished. In terms of dangerousness, Defendant has one conviction for misdemeanor assault in 2010, reduced from felonious assault, one conviction for driving under the influence in 2006, and was most recently arrested for drunk and disorderly conduct. (Doc. 16-8, 16-10). Additionally, his arrest record over the past decade contains multiple other arrests for alcohol-related offenses. (Doc. 16-8).

The third factor, history and characteristics of the defendant includes consideration of family ties, financial resources, length of residence in community, past conduct, criminal history, and alcohol abuse. § 3142(g)(3)(A). The Government contends Defendant has shown a history of disobeying the law and orders of the court. For example, he refused to appear for his removal

11

hearing in 2003, has continually entered the country illegally, used aliases to evade apprehension, lived "off the grid", and had a criminal record. Additionally, Defendant has a valid ICE detainer that provides motivation to flee and not appear for trial. In contrast, Defendant alleges his family, including four U.S. citizen children, girlfriend of eight years, father, and extended family, all live in northeast Ohio. Furthermore, he has lived in northeast Ohio for twelve years excepting the times he was removed to Mexico, owns a house in Lorain, Ohio, and has a relatively benign criminal history.

Lastly, the Court must consider the danger to the community if Defendant is released. § 3142(g)(4). The Government argues Defendant is a danger because he has a history of driving under the influence and other alcohol-related offenses. And further, his status as an illegal alien has resulted in his criminal record being diluted by quick removals from the country before prosecution. In contrast, record evidence shows Defendant was last arrested for driving under the influence in 2010 and his most recent arrest, though involving alcohol did not include violence.

Although it presents a close call, particularly as relates to Defendant's propensity to live "off the grid" and undetected in this country, the Court would be inclined to grant Defendant bail absent one factor, his unlawful presence in this country. It is not that his illegal presence renders him dangerous or a flight risk; rather his illegal presence will be a *per se* violation of the conditions of his bail. A statutory condition of release under the BRA is "that the person not commit a Federal, State, or local crime during the period of release". § 3142(c)(A). Defendant, by virtue of his very presence here, is committing an illegal act and "indeed his [ ] release would violate perhaps the most important condition of release, that he not continue to violate the law." *United States v. Campos*, 2010 WL 454903 at *2 (M.D. Ala.). There is nothing this Court can do to remedy Defendant's unlawful presence in this country nor can it ignore or absolve him of the

inevitable violation of a condition of his release; thus Defendant's request for pre-trial release is denied.

### CONCLUSION

Following review of the arguments presented, the applicable law, and the Defendant's particular circumstances, the undersigned denies Defendant's request for pre-trial release. The Defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. The Defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the Defendant to the United States marshal for court appearances.

IT IS SO ORDERED.

                                                        s/James R. Knepp II
                                                       United States Magistrate Judge