IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

                Plaintiff,                Case No. 3:14 CR 0204

v.

                                       AMENDED MEMORANDUM
                                       OPINION AND ORDER

Juan Ramon Valadez-Lara,

                Defendant.

## INTRODUCTION

Juan Ramon Valadez-Lara, a.k.a., Juan Ramon Valadez-Bonilla was arrested on May 20, 2014, and charged with illegal re-entry after removal pursuant to 8 U.S.C. § 1326(a) and (b). (Doc. No. 6). Defendant filed a motion to dismiss the indictment[1], and I held a hearing on the motion, essentially oral argument, on October 14, 2014. (Doc. No. 9). Defendant subsequently filed a motion for judicial decision. (Doc. No. 20). For the reasons stated below, Defendant's motion to dismiss is denied.

## BACKGROUND

Defendant was first apprehended by immigration officials on May 13, 2003, when he was fifteen years old, and gave his name as Juan Ramon Valadez-Lara. (Doc. No. 11-5). That same day, Defendant was personally served with a notice to appear, otherwise known as Form I-862, informing him of the allegations supporting the charge of deportation and ordering him to appear before an immigration judge at a later, unspecified date. (Doc. No. 13). Defendant acknowledged service of the notice to appear and receipt of the same by signing his name as "Juan Ramon Valadez-Bonilla," despite previously providing the name Juan Ramon Valadez-Lara to law

---

[1] The Government opposed (Doc. No. 11) and Defendant replied (Doc. No. 12).

enforcement. (Doc. No. 13 at 4). This form was also signed by Special Agent David Kryszak, who certified that he provided oral notice to Defendant in both English and Spanish. (Doc. No. 13 at 4). Defendant provided a physical mailing address as required, and was released on his own recognizance. (Doc. No. 14-1).

Subsequent to his release, the immigration court sent Defendant notices for removal hearings on four separate occasions.[2] (Doc. No. 14-1 at 1-4). Pertinent here, the immigration court sent Defendant a notice of hearing in removal proceedings on January 30, 2006, with a certificate of service signed by court staff advising Defendant that a removal hearing was scheduled for February 14, 2006 at 10:00 a.m. in Cleveland, Ohio. (Doc. No. 14-1).

Defendant did not appear for this removal hearing and an order of removal *in abstentia* was entered on February 16, 2006. (Doc. No. 14-1). The immigration judge found that Defendant had been "provided with written notification of the time, date, and location" of his removal hearing and warned that "failure to attend this hearing would result in the issuance of an order of removal." (Doc. No. 14-1). Both the notice of hearing and notice to appear were attached as exhibits to the immigration judge's hearing decision. (Doc. No. 14-1 at 6). The immigration judge ordered Defendant deported to Mexico upon apprehension, and at some point a warrant was issued to effectuate this order. (Doc. No. 11-3 at 1).

Defendant was again apprehended in August 2008, after which he was subsequently removed to Mexico on the reinstated removal order. (Doc. No. 11-2). Defendant's alien file (or "A-file") shows he has re-entered the United States on at least five different occasions and has been removed four times. (Doc. No. 11-7). According to his A-file it was typical for Defendant to

---

[2] It appears that Defendant was afforded the opportunity of, and did not appear for, at least three removal hearings, as written notices for each are attached as exhibits to the immigration judge's order of removal. (Doc. No.14-1 at 1-4). It also bears noting that the burden is on Defendant to contact INS using Form EOIR-33 whenever an address change occurred. This instruction was explicit in the personally-served notice to appear signed by Defendant when he was apprehended in 2003. (Doc. No. 13 at 4).

2

provide different names to law enforcement and immigration officials upon apprehension. (Doc. No. 11-2). These names are documented along with Defendant's fingerprints, birthday, photographs, and removal history in his A-file. This file is maintained by Border Protection.

Defendant's most recent apprehension occurred on May 12, 2014, for disorderly conduct while intoxicated. Following this arrest, Defendant was charged with illegal re-entry into the United States after removal in violation of 8 U.S.C. § 1326. (Doc. No. 6). On August 1, 2014, Defendant filed a motion to dismiss the indictment, challenging the validity of the previous deportation order upon which the Government relies as the predicate offense in this case. Because Defendant claims he never received notice of his removal hearing, he argues that the original order is constitutionally infirm and cannot serve as the basis for the underlying offense.

## DISCUSSION

Title 8, Section 1326 of the United States Code makes it an offense to re-enter the United States illegally after having been deported. "Because an original order of deportation is a condition precedent to the operation of § 1326, the Supreme Court has held that a defendant may collaterally attack the deportation order underlying the offense." *United States v. Arita-Campos*, 607 F.3d 487, 490 (7th Cir. 2010) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987)). Congress has provided a procedure for a limited collateral attack in 8 U.S.C. § 1326(d), which provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that --
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

3

A final deportation order enjoys a presumption of validity, and it is clearly a defendant's burden to prove the elements of § 1326(d) to overcome the presumed legality of the earlier deportation order. *United States v. Gonzales-Campos*, No. 2:13-cr-255, 2014 WL 1091043 at *4 ( S.D. Ohio March 18, 2014) (quoting *United States v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010)). Although the Sixth Circuit has strongly implied that all three requirements in §1326(d) must be met, it has yet to explicitly remark on whether they are stated in the conjunctive. *United States v. Martinez-Rocha*, 337 F.3d 566, 568 (6th Cir. 2003) ("defendant must demonstrate that" the three prongs of § 1326(d) have been satisfied.). This question need not be resolved here, as Defendant fails to satisfy any of the three requirements contained in § 1326(d).

Defendant argues that he meets all three elements of §1326(d) because was he was deprived of notice to his initial 2006 removal hearing, which serves as the predicate offense in the case at bar. (Doc. No. 9 at 4; Doc. No. 12 at 2, 5-6). The Immigration and Nationality Act (INA) provides that an alien must be given written notice of "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). Moreover, the regulations provide that the "Immigration Court shall be responsible for scheduling cases and proving notice to the government and the alien the time, place, and date of hearings." 8 C.F.R. § 1003.18(a).

Because Defendant's motion turns on whether or not he received proper notice, I need not partake in an individual analysis of each 1326(d) factor. Here, the Defendant was personally served with a notice to appear, which advised Defendant that a removal hearing would be held at a later date. The notice to appear was signed by Defendant and read to him in both English and Spanish. Moreover, the immigration court sent Defendant a notice of hearing advising him of the specific date, time, and place of his removal hearing. Dispositive here, valid and proper notice exists when an alien is personally served with a notice to appear, combined with a subsequent notice of hearing. *See Mota-Roman v. Holder*, 331 F. App'x 379, 382 (6th Cir. 2009).

The Government produced the underlying documents subsequent to briefing, but prior to the hearing before me. (Doc. Nos. 13, 14). Defendant has not claimed defects in these underlying documents. To be sure, any argument that the notices were defective is immaterial to the motion at bar, because Defendant clearly maintains he did not receive notice at all. Thus, regardless of when the documents were produced, Defendant's argument must fail once they were. Accordingly, Defendant's argument that he was not given notice of his initial removal hearing, which serves as the predicate offense in this case, fails.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is denied (Doc. No. 9), and his motion for judicial decision is denied as moot (Doc. No. 20).

So Ordered.

                                                  s/ *Jeffrey J. Helmick*
                                                United States District Judge